Longworth, J.
In tlie year 1869 Yalentine B. Ilorton and Charles W. Dabney owned in fee a tract of land containing 43 acres, rectangular in shape, near the Ohio river, in the city of Pomeroy. This tract fronted southwardly toward the river, and on the north adjoined a 300-acre tract of coal land, afterward purchased by the plaintiff in error. They also owned a coal landing, or platform, known as the “ Goulding Platform,” adjoining this 43-acre tract at its southeast corner. The furuace of the Buckeye Salt Co., defendant in error, was near the southwest corner of the tract. Under the surface of this land «xtended a vein of coal, outcropping across the northeast corner and along the cliffs of the south front. A long-disused entry or passage-way extended from the Goulding platform through the coal vein northwardly to certain deserted workings, or coal mines, in the northeasterly portion of the tract. These workings had caved in, and the entry had become partially or entirely filled up, so as to be impassable unless cleaned.
In the year mentioned Horton and Dabney conveyed to defendant this tract in fee; the deed, however, contained this reservation: “ Saving and excepting a right of vray from what is known as the Goulding platform, on lots numbered 279, 280, 281, and contiguous lots, by an entry to the north and east sides of the tract hereby granted, and the right to make such ways and roads and keep them in repair, for the transportation of coal and salt, as may be deemed necessary and expedient by the grantors, their heirs and assigns.”
Pomeroy, having become the owner of the 300-aere tract on the north, purchased from Horton and the heirs of Dabney the Goulding platform, together with the rights of way so reserved by them, for the purpose of obtaining an entrance to the coal veins in his 300-acre tract. Beginning at the platform he opened and cleared the old entry half-way across the tract, until he came to the deserted workings. Prom this point the evidence shows it to have been impracticable to proceed further to the north, the standing coal necessary to support the passage-way having been exhausted. Near this point, however, was discovered another deserted entry running west. This entry he cleared and followed to the center of the tract, *522 the first point where he found standing coal sufficient to support a new entry. Through this standing coal he drove a new entry arid wind-way for ventilation due north into his own land.
The defendant purchased the 43-acre tract for the purpose of mining coal therein to use in its salt furnace. For this purpose it had driven an entry and wind-way northwardly through the western portion of its land to a point about three-fourths of the way across the tract: thence it proposes to drive its entry at right angles eastwardly through and across the entry of plaintiff, and at the same level, for the' avowed purpose of reaching the remaining coal in the northeast portion of its tact, and possibly with the further object of obtaining coal from lands lying to the east of the same.
■ To prevent this action the plaintiff brought suit in the common pleas court of Meigs county,'praying for an injunction to prevent defendant from “penetrating and breaking the walls of said way and entry, and from crossing the way and entry of plaintiff.” The case was fully tried on appeal in the district court and the petition was dismissed. This decision we are now called upon to review.
The defendant maintains that it has the right to cross the plaintiff’s entry and wind-way for several reasons which we shall now consider.
I. It is urged that the right reserved by_ Horton and Dabney in their deed to the defendant was not assignable, and Boatman v. Lasley (23 Ohio St. 614), is relied on. In that case this court decided that a right of way m gross is a right personal to the grantee and cannot be made assignable or inheritable by any words in the deed by which. it is granted. This is undoubtedly the law. In the case at bar, however, the right of way was not m gross, but was cvpp'iwtenant to the land known as the G-oulding platform, the conveyance of which to Pomeroy, together with the right of way aj>purtenant thereto, was effectual to pass title.
II. Defendant insists that, by the terms of the deed from Horton and Dabney, nothing more was reserved than a right to an entry extending from the platform in a direction due north, or substantially due north, along the easterly side of the tract; *523 and that, by going west to the center of the tract and then driving his entry north, the plaintiff has exceeded the right granted him, and has cut off the defendant’s approach to its coal fields in the northeast quarter of its land; unless .it is permitted to cross his entry. We are not prepared to say that in driving his entry as he did Pomeroy was a trespasser. Although doubtless it was possible to extend the entry due north through the deserted mines to the north and east sides of the tract, yet it clearly appears from the evidence that such a course was not reasonable or practicable, and it does not appear that Pomeroy went any further to the west than was absolutely necessary to find standing coal sufficient to support his entry. This we think, under the terms of the. reservation, he had a right to do. Had we any doubt upon this subject, however, such doubt would be set at rest by considering the subsequent action of the parties. It seems to have been conceded by Pomeroy that the coal taken from his now entry belonged not to him but to the Salt Company, and he therefore proposed to pay the company at the rate of three-quarters of a cent per bushel, measured in the solid, for all coal so taken out by him. This proposition by its terms referred only to coal taken from the solid vein and not to such loose coal as might be found in clearing up the old entries or in the deserted workings. The proposition was, by a vote of defendant’s directors, formally accepted April 24,1874, and an agreement in writing was entered into four days later, which, after reciting the conveyance from Horton and the heirs of' Dabney to-Pomeroy, reads as follows:— “ and whereas, in the prosecution of the right so acquired, the said Samuel Wyllys Pomeroy, in driving his entry, passes through coal which he concedes is the property of the Buckeye Salt Company: now, therefore, the said company agrees to receive, as full compensation therefor, and the said Samuel Wyllys Pomeroy to pay, to the said company, for the coal removed by him in the prosecution of his said right of way, a royalty of three-fourths of a cent a bushel.
“ It is also mutually agreed by the said parties that the coal so removed shall be estimated by measurement of the space occupied by the same before removal, by competent mining *524 engineers, who shall make due allowance for customary waste in mining, slack, &c., on which no royalty is accustomed to be paid.”
The evidence shows that Pomeroy paid royalty, from time to time, on all the coal taken out by him in driving his entry and wind-way through the standing coal according to the terms of this contract; and that all this coal as taken out was purchased from him by the Salt Company.
Under this state of facts we do not think that defendant is in a position to question plaintiff’s right to locate his entry as he did.
III. Under this state of facts the question arising for decision is, whether defendant has the right to cross the plaintiff’s entry, at the same level, by an entry of its own. It is clear from the facts proved that to cross at any other level above or underneath plaintiff’s entry would be impossible.
We do not think that there exists any difficulty in ascertaining the principles of law which govern the case. It having been established that Pomeroy has a right to the use of his entry as located and constructed, it is clear that defendant should not be permitted to do any act whereby such right will be destroyed or substantially interfered with. It is also clear that the Salt Company, being the owner of the land, subject only to the easement, has the right to the use thereof in any manner not inconsistent with the easement reserved. If then it is possible for it to cross the entry of plaintiff in the manner proposed, without destroying or substantially interfering with his use of the same, its right to do so is beyond question; and, if such right exists, we cannot see that the defendant’s reason for making the crossing, whether for the purpose of mining coal in its own tract or of obtaining coal from lands lying to the east, is a subject for the court’s consideration. These are the principles applicable to rights of way upon the earth’s surface, and we are not aware that they lose their application where such rights of way happen to be underground.
It is claimed by plaintiff that it is impossible to cross his entry, by another entry at the same level, without rendering his right of way useless and the working of his mines impracti *525 cable; for the reason that the necessary breaking of the continuity of his entry and wind-way will destroy the draft of air by which his mines are ventilated, and without which it is absolutely impossible to work them. lie also says that the danger of collision between trains at the crossing would be very great, owing to the darkness of the entries and the impossibility of discerning the approach of a crossing train until the moment of contact. On the other hand it is claimed that these are not necessary consequences of the proposed crossing; but, on the other hand, that, if the openings in the walls of plaintiff’s entry and wind-way are closed with air-tight doors, which shall only be opened to admit the passage of trains, and then closed, the ventilation will not be interfered with, at least to any material degree; and that, by having a watchman constantly stationed at the point of crossing, all danger of collision will be avoided.
In support of these several claims a large amount of testimony has been taken, all of which is before us, and all of which we have examined with care.
We are satisfied that the crossing of the entries, if properly made by defendant, all reasonable means being used by it to prevent injury to plaintiff’s right of way, such as have been referred to, his use of his entry will not be seriously affected.
It will be observed that no charge is made that defendant proposes to cross plaintiff’s entry in an improper manner; on the contrary, the only claim of threatened injury is that defendant proposes to make the crossing. This crossing, we think,' as before said, the defendant has the right to make, provided it protects plaintiff, at its own expense, from all possible injury; and we have no reason to suppose that it intends to do otherwise. These being the issues before the district court, we think that court was right in dismissing plaintiff’s petition and refusing an injunction. No injury was threatened. Should the defendant, in effecting such crossing, fail to use all proper means to protect the rights of plaintiff, or at any time fail to provide the same, the courts are open to hear the complaint. Indeed, we see no reason to doubt the power of the court to enforce all reasonable conditions on the *526 part of defendant, by mandatory injunction, even after tbe. crossing has been completed and the new entry used.

Judgment affirmed.

Johnson, J., did not sit in above case.